IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-HC-2054-BO

| | | |
|---|---|---|
| BOBBY HAIRSTON, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| JOEL HERRON and ALVIN W. KELLER, | ) | |
| Respondents. | ) | |

Bobby Hairston ("petitioner"), a state prisoner, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Joel Herron, is before the court with a motion for summary judgment to which petitioner responded. The matter is ripe for determination.

I. Background

On June 8, 2007, in Superior Court, Onslow County, petitioner was found guilty after a jury trial of assault with a deadly weapon with intent to kill inflicting serious injury (AWDWIKISI), first-degree kidnapping, robbery with a dangerous weapon, two counts of second-degree kidnapping, and three counts of financial card theft. (Mem. in Supp. of Summ. J., Ex. 1 at 1, 45-48) The judgment was arrested on the three counts of financial card theft and three counts of kidnapping. (Id. at 49). The judge imposed consecutive presumptive-range sentencing terms of 116 to 149 months' imprisonment for AWDWIKISI and 81 to 115 months' imprisonment for robbery. (Id. at 45-48). Petitioner was represented at trial by Ms. Janine W. Dunn. (Id. at 45).

Petitioner noticed an appeal to the North Carolina Court of Appeals, and in an unanimous published opinion filed May 20, 2008, the appellate court found no error in the criminal

judgments. State v. Hairston, 190 N.C. App. 620, 661 S.E.2d 39 (2008). Petitioner was represented on appeal by Assistant Appellate Defender Ms. Barbara S. Blackman. Id. at 620, 661.

On June 6, 2008, petitioner, through Ms. Blackman, petitioned the North Carolina Supreme Court for discretionary review of portions of the North Carolina Court of Appeals opinion. (Id., Ex. 5, Pet. for Disc. Review & State's Resp.) On March 19, 2009, the North Carolina Supreme Court denied discretionary review on March 19, 2009. State v. Hairston, 363 N.C. 133, 676 S.E.2d 47 (Mar. 19, 2009). On or about January 27, 2010, petitioner filed a pro se application for writ of habeas corpus in the Superior Court, Onslow County. (Mem. in Supp. of Summ. J., Ex. 7; Ex. 8) The Superior Court construed the filing as both a petition for writ of habeas corpus and a motion for appropriate relief (MAR). (Id., Ex. 8 at 1) On February 19, 2010, the Superior Court denied petitioner's habeas petition/MAR. (Id.) On March 8, 2010, petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals seeking review of the Superior Court's order denying his habeas petition/MAR. (Id., Ex. 9) On March 25, 2010, the North Carolina Court of Appeals denied petitioner's certiorari petition. (Id., Ex. 10) On April 7, 2010, petitioner submitted this § 2254 petition to this court.

II.  Factual Findings

The facts are summarized in the Court of Appeal opinion as follows:

> The State presented evidence tending to show that Gene Moore ("Moore"), the proprietor of Private Pleasures and other businesses adjoining that property, walked from Private Pleasures along a back hallway that connected to his other businesses on 21 May 2006 at approximately 3:00 a.m. While walking, Moore was confronted by two men that informed him that "'this is a hold up'" and demanded that Moore hand over whatever money he possessed. The two men told Moore not to move. Moore began to back up and was shot in the stomach.
>
> Thereafter, the men put a gun to Moore's head and demanded money from him and the keys to his safe. The men informed Moore that if he did not

2

comply, they would kill him. Diana Moody, Moore's employee, approached the scene, removed money from Moore's shirt pocket, and gave the money to the men. The two men also took Moore's wallet and a moneybag.

Detective Joseph Frandsen of the Onslow County Sheriff's Office was assigned to investigate the robbery. Ferondo Moore, Moore's son, told Detective Frandsen that according to Moore's credit card statement, the credit cards stolen from his father had been used in Havelock, North Carolina. Upon contacting the Havelock Police Department, Detective Frandsen spoke with Detective Mike Stuart. Detective Stuart was thereafter able to identify Demario Brown ("Brown") as a suspect in the Moore robbery. Detective Stuart then issued a search warrant against Brown's home, where he found stolen items reported from another robbery, Moore's credit cards, and several items that had been purchased on Moore's cards after they were stolen.

During the course of executing the search warrant, defendant pulled up to Brown's home. Detective Stuart requested to pat down defendant. Defendant asked to retrieve some shoes for the children that had been in his car. Detective Stuart allowed defendant to do so and upon returning to the car, defendant reached for a handgun. Detective Stuart then handcuffed defendant. Defendant told the officers he had another gun in his back pocket. The police recovered this gun off defendant's person, a silver .22-caliber handgun, in addition to a stun gun.

When questioned about the robbery, defendant confessed to both shooting Moore and to robbing him. Later, however, defendant sent Detective Frandsen a note denying his participation in the robbery and shooting of Moore. Defendant explained in the note that the only reason he admitted to the robbery and shooting was to gain "street credit for doing ... the shooting[.]"

Kendy Hairston, defendant's wife, testified that defendant was with her the entire time in which the State alleged that the crimes occurred. Specifically, Mrs. Hairston testified that she and defendant watched a movie on the evening of 20 May 2006 and went to bed around 1:00 or 2:00 a.m. on the morning of 21 May 2006. She also stated that she and defendant went to church later that same morning.

Hairston, 160 N.C. App. at 621-622.

3

Case 5:10-hc-02054-BO   Document 14   Filed 02/09/12   Page 3 of 13

III. Issues

Petitioner asserts three issues in his petition: (1) ineffective assistance of counsel; (2) trial court error in sustaining the State's objection to Detective Frandsen's testimony that Shannon Hicks did not say she knew petitioner; and (3) an unconstitutional indictment.

IV. Discussion

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision is

4

"contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see Hardy v. Cross, 132 S. Ct. 490, 493–94 (2011) (per curiam); Bobby v. Dixon, 132 S. Ct. 26, 29–31 (2011) (per curiam); Cavazos v. Smith, 132 S. Ct. 2, 4–8 (2011) (per curiam); Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the AEDPA standard to be difficult to meet. Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. In order to prevail in an action brought under section 2254(d), a petitioner must show that "there was no reasonable basis to deny relief." Id. at 784; DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011), cert. denied, No. 11-6640, 2011 WL 4528510 (U.S. Dec. 5, 2011).

5

a.  Ineffective Assistance of Counsel

The court shall first review petitioner's claim for ineffective assistance of counsel. In Strickland v. Washington, 466 U.S. 668, 687-90 (1984), the Supreme Court held that to prove ineffective assistance of counsel a petitioner must show counsel's performance was deficient and that the deficiency prejudiced his case. No such showing has been made in reference to this issue.

The first allegation of ineffective assistance of counsel is based on trial counsel's cross-examination of the victim, Mr. Moore. Petitioner argues that counsel erred in having Mr. Moore identify petitioner as the perpetrator.

The issue was raised on direct appeal, and the appellate court held the following.

> In order to assert an ineffective assistance of counsel claim, defendant must: (1) show that his counsel's performance "fell below an objective standard of reasonableness[;]" and (2) establish that "the error committed was so serious that a reasonable probability exists that the trial result would have been different" but for the error. State v. Gainey, 355 N.C. 73, 112, 558 S.E.2d 463, 488 (2002).

> In this case, the State did not elicit an identification of defendant from Moore while Moore was testifying. On cross-examination, however, the following exchange took place between defendant's counsel and Moore:

> Q. Did you get a good look at their faces?

> A. It was real dark that night in the hallway, real dark. Couldn't hardly see nothing back there. I was looking and showed [ sic ] the guy, one was darker than the other one.

> Q. Do you recognize [defendant]?

> A. Yeah. I remember seeing him.

> Q. Okay. You think you saw him that night?

> A. Yeah. There was two head of them [ sic ]. Another one, the other guy was a little bit lighter than him, best of my remember [ sic ]. The other guy was a little lighter than him.

6

Q. But you are not real sure about that, are you?

A. Yeah. I know one was lighter.

"Our Supreme Court has stated, 'this court engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct' when reviewing ineffective assistance of counsel claims." State v. Medina, 174 N.C. App. 723, 729, 622 S.E.2d 176, 179 (2005) (quoting State v. Roache, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004)). It is not the role of the appellate court " 'to second-guess counsel's tactical decisions.' " Id. at 729, 622 S.E.2d 176, 622 S.E.2d at 179-80 (citation omitted).

When unfavorable information is inadvertently elicited, a trial counsel's performance will not fall below the boundaries of acceptable professional conduct where counsel was attempting to elicit favorable information. State v. Pretty, 134 N.C. App. 379, 390, 517 S.E.2d 677, 685 (1999) (Greene, J., concurring) (concluding that where evidence presented supports the inquiry, there will be no finding of ineffective assistance of counsel). Here, defendant's counsel was attempting to elicit a favorable non-identification by Moore. Defense counsel had ample reason to pursue such a course: During the State" direct examination of Moore, Moore had testified that he had not previously known either man that he encountered in the rear of building, and only provided a description of the men that had robbed and assaulted him-that one man was of darker complexion than the other and that both were roughly the same height. The State did not have Moore make an in-court identification of defendant. Thereafter, defendant's counsel made a tactical choice to question Moore about his ability to identify defendant as the perpetrator of the crimes. Given Moore's testimony on direct examination, it was not unreasonable for defense counsel to conclude that Moore would likely be unable to identify defendant and to pursue the line of questioning quoted above. Accordingly, we hold that defendant's counsel's performance did not fall below an objective standard of reasonableness.

Moreover, even were we to find deficient performance, there is overwhelming evidence of defendant's guilt, even minus the quasi in-court identification. Testimony presented at trial consisted of a witness to the robbery, who noted that one of the men who robbed the store had a silver .22-caliber handgun that looked identical to the one taken from defendant when his car was searched. Additionally, the jury heard testimony that defendant and Brown had robbed another adult entertainment store down the street from Moore's businesses using a similar method. Finally, defendant admitted during his police interrogation that he had robbed and shot Moore and robbed the other adult entertainment store down the street. Although defendant later recanted his initial statements to the police, he made no allegations that his initial confessions were made under duress or were otherwise obtained improperly. Instead, defendant stated that the confessions were made in an effort to gain "street credit."

7

> Given the evidence of defendant's guilt, defendant has made scant argument as to prejudice in his brief to this Court and we cannot say that there was a probability that the result of defendant's trial would have been different. Accordingly, defendant's assignment of error as to this issue is overruled.

Hariston, 190 N.C. App. at 623-65. The North Carolina Court of Appeals adjudication is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States in Strickland. Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Therefore, pursuant to § 2254(d)(1) and (2), the North Carolina Court of Appeals' adjudication should not be overturned on federal habeas review. See Harrington, 131 S. Ct. at 786.

Petitioner also asserts that counsel erred in eliciting information from witness Michelle Duganne about petitioner's plea of guilty to a prior robbery. The trial testimony regarding this issue included the State presenting the testimony of Michelle Duganne, an employee of Gruntz Adult Video Store, located near Mr. Moore's businesses. (State Ct. R,, Ex. 11, Trial Transcript 126) Duganne testified that on a separate occasion, petitioner entered Gruntz's video store while she was working. (Id. at 126-29) Shortly thereafter, a second man entered the video store. (Id. at 131) Believing the two men were together, Ms. Duganne showed the second man where petitioner was. (Id.) After both men used the restroom, petitioner approached Ms. Duganne with a gun and told her to give him the money. (Id. at 132-33) The men duct taped Ms. Duganne's hands and feet, and then took money, Ms. Duganne's driver's license, the store surveillance video, and other items. (Id. at 134-36) The Gruntz robbery evidence was admitted under state rule of evidence 404(b) to establish identity, plan, scheme, or design. (Id. at 122-24, 128-29);

8

N.C.G.S. § 8C-1, Rule 404(b) (2009). On cross-examination, defense counsel asked Ms. Duganne if she had been advised that Petitioner pled guilty to the video store robbery. (Id. at 148)

Petitioner contends that defense counsel was ineffective in eliciting this information. Regardless of whether this discussion could be considered deficient performance by trial counsel, prejudice cannot be shown. The jury knew, through Ms. Duganne's detailed testimony, that petitioner had robbed the adult video store while she was working and was a victim to the crime. Knowing that petitioner pled guilty to the crime, is simply an additional fact. Furthermore, the North Carolina Court of Appeals held there was "overwhelming evidence" of petitioner's guilt. As such, but for counsel's elicitation, the result would not have been different. The Superior Court's alternative adjudication of this issue was correct. (State Court Record, Ex 8, Superior Court Order) The adjudication is not contrary to or an unreasonable application of Supreme Court case law in Strickland and the findings of fact upon which it was based are reasonable. Therefore, the claims are dismissed.

    b.    <u>Trial Error</u>

Petitioner next argues that the trial court erred in sustaining the State's objection to Detective Frandsen's testimony that Shannon Hicks did not say she knew petitioner. Petitioner raised the substance of this claim on direct appeal to the North Carolina Court of Appeals. The state court records do not reveal that he subsequently raised this claim in his petition for discretionary review.[1]

---

[1] In North Carolina, seeking discretionary review of a North Carolina Court of Appeals decision in the North Carolina Supreme Court is part of the ordinary appellate review process. N.C.G.S. § 7A-31 (2009) (noting requirements for seeking of discretionary review of a North Carolina Court of Appeals' decision in the North Carolina Supreme Court)

9

A habeas petitioner in state custody generally must exhaust state court remedies. See 28 U.S.C. § 2254(b). Furthermore, a federal habeas court may not review unexhausted claims that would be treated as procedurally barred by state courts-absent cause and prejudice or a fundamental miscarriage of justice. See Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004); Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000); Mackall v. Angelone, 131 F.3d 442, 445 (4th Cir.1997) (en banc). This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (internal quotation marks and citation omitted). Therefore, the Supreme Court instructs that, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" to include "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." Id. at 845, 847. One must fairly present to the state court "both the operative facts and the controlling legal principles" associated with each claim. Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000) (citing Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.1997) (internal quotation marks omitted)). "In other words, the ground must 'be presented face-up and squarely.'" Longworth, 377 F.3d 437, at 448 (citing Mallory v. Smith, 27 F.3d 991, 995 (4th Cir.1994)) (citation and internal quotation marks omitted).

As noted above, procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the

effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). To show "prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir.1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). "The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Williams v. Bagley, 380 F.3d 932, 973 (6th Cir. 2004) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995) "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. No allegations rising to cause or prejudice or fundamental miscarriage of justice have been clearly argued to satisfy the gateway to avoid a procedural bar, and the claim is dismissed.

c. Unconstitutional Indictment

Petitioner is not entitled to relief based on an allegation of an unconstitutional indictment. Alleged deficiencies in state court indictments are not ordinarily a basis for federal habeas relief unless they rendered the entire proceeding fundamentally unfair. Ashford v. Edwards, 780 F.2d 405 (4th Cir. 1985); see also Wright v. Angelone, 151 F.3d 151 (4th. Cir.) (holding that claim alleging lack of jurisdiction via defect indictment based upon interpretation of state law is not cognizable on federal habeas review), cert. denied, 525 U.S. 925 (1998), and United States v. Cotton, 535 U.S. 625 (2002) (determining that defective indictments do not deprive the trial

11

court of jurisdiction); Bruce v. Robinson, 2010 WL 4318871 (D.S.C. 2010) (unpublished) ("deficiencies in state court indictments are therefore 'not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process.'") No fundamental unfairness has been alleged, and the claim is dismissed.

V.   Certificate of Appealability

Having dismissed the petition, the court must now consider the appropriateness of the certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

VI.   Conclusion

Accordingly, Respondent's Motion for Summary Judgment (D.E. # 9) for dismissal of the habeas corpus petition is GRANTED and the matter is DISMISSED. The certificate of appealability is DENIED. The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this 7 day of February 2012.

*TERRENCE W. BOYLE*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE